(No. 34408.—

A. S. THOMAS, Appellant, *vs.* JOSEPHINE E. RICHARDS *et al.,* Appellees.

*Opinion filed March 20, 1958.*

312

Augustine J. Bowe, and Edward S. Macie, both of Chicago, for appellant.

Franklin J. Stransky, and Rathje, Kulp, Sabel & Sullivan, both of Chicago, for appellees.

Mr. Justice Bristow delivered the opinion of the court:

This court has heretofore granted plaintiff's petition for leave to appeal from a decision of the Appellate Court, First District, reversing and remanding a decree of the superior court of Cook County.

The action is a creditor's suit to establish a lien upon real estate on the alternative theory of a resulting or constructive trust and for sale of the property in satisfaction of the judgment. The trial court decree was in favor of the plaintiff. On appeal to the Appellate Court, First District, the cause was reversed and remanded with directions to dismiss the suit for want of equity.

Where the Appellate Court determines the issues and decides the questions involved upon their merits and reverses and remands the cause with directions to proceed in conformity with the views expressed in the opinion, as was done in the instant case, there is no power in the court below except to enter final judgment without retrial and the judgment of the Appellate Court is final and subject to further review by the Supreme Court. *Nye* v. *Nye,* 411 Ill. 408.

The real estate in issue in this litigation is a tract situated at the northeast corner of Fifty-first Street and Throop Street in Chicago, improved with a two-story brick office and apartment building. The property was initially acquired by Nellie Kowalewski (hereinafter referred to as Nellie) on June 3, 1925, for which Nellie and her husband, Roman, gave back a purchase money mortgage of $20,000. On June 30, 1925, Nellie and her husband executed a second mortgage for $25,000.

On February 13, 1932, a suit seeking foreclosure of the second mortgage was filed in the superior court and thereafter on August 4 a foreclosure suit was filed by holders of the first mortgage. Thereupon the foreclosure of the second mortgage was abandoned, and on June 10, 1933, a decree of foreclosure of the first mortgage was entered, finding $19,080.88 due and that the mortgage was a first

and prior lien on the property, its rents, issues and profits. On July 6, 1933, a sale was held pursuant to the foreclosure decree and the holders of the first mortgage purchased the property at the sale and a master's certificate of purchase was duly issued and recorded on July 21, 1933. The master's sale was approved on January 22, 1937, and a deficiency decree for $1,598.69 entered. On April 18, 1935, however, the master's deed to the property had been issued and recorded. There was no appeal from the foreclosure decree.

On or about November 4, 1935, a quitclaim deed from Nellie and her husband, Roman, to Richard Kowalewski, Nellie's son, dated June 4, 1930, was recorded. On November 5, 1935, the second mortgage trust deed and note were owned and held by one B. Byer and were exchanged for a note made by Nellie and Roman, her husband, for $15,748 payable to Byer or order.

On or about December 18, 1936, there was recorded a quitclaim deed dated December 16, 1936, from Richard Kowalewski to Josephine Kowalewski, his wife. On January 4, 1937, a quitclaim deed dated September 30, 1936, from the master's grantees to Josephine Kowalewski was recorded. Thereafter Josephine and her husband, Richard, conveyed to a family-owned corporation in June of 1937 and on August 20, 1940, a warranty deed conveying the property back to Josephine from the corporation was recorded.

Plaintiff, as the then legal owner and holder of the $15,748 note previously executed by Nellie and her husband, Roman, confessed judgment thereon on October 29, 1940, against Nellie and Roman for $21,556.65 and costs.

On November 22, 1940, the original complaint in the instant suit was filed in the superior court of Cook County alleging the judgment by confession, that execution had been issued and returned with no satisfaction thereon, that the real estate in question and said deeds and other prop-

erty were held in trust for Nellie and Roman, her husband, by Josephine and other defendants and praying a determination of the interests of Nellie and Roman in such property and asking for discovery from the defendants as well as other incidental relief. The original complaint was clearly a creditor's bill to satisfy the plaintiff's judgment out of an equitable estate not otherwise subject to levy and sale under execution, pursuant to the provisions of section 49 of the Chancery Act. Ill. Rev. Stat. 1939, chap. 22, par. 49.

The record clearly shows that the original execution issued on plaintiff's judgment of October 29, 1940, was not returned unsatisfied until February 4, 1941. The litigation remained dormant for several years. On June 8, 1947, Nellie died but no suggestion of her death was made in the proceedings until on or about September 12, 1952. On November 19, 1948, the case was referred to a master in chancery for hearing of evidence. On February 27, 1950, an original proceeding was filed in the superior court for the revival of the judgment of October 29, 1940, which had previously become dormant in October of 1947. A judgment of revival was entered April 21, 1951, and on June 24, 1952, an execution issued thereunder was returned "no property found." On June 16, 1955, the master's report in the case was approved, and on June 24, 1955, by leave of court, plaintiff filed her third amendment and supplement to the amended complaint. In such amendment and supplement plaintiff made no mention of the original judgment of October 29, 1940, but based her cause of action entirely on the judgment of revival and the return of execution subsequently issued thereon and returned "no property found." It must also be noted that Roman, the husband of Nellie, had died July 23, 1950.

The plaintiff's pleadings, the master's report and the decree are silent and make no mention whatsoever either of the fact of Nellie's and Roman's death, as to who their

heirs-at-law or devisees might be, or their interest in the subject property, nor does there appear to have been any attempt to substitute for Nellie or Roman their heirs-at-law as parties by amendment.

The Appellate Court held that the decree of the superior court should be reversed and the suit dismissed for want of equity because the judgment of revival was void for want of jurisdiction of the person of Nellie, her heirs-at-law and her personal representatives and because the equitable lien which arose upon the filing of the original suit was lost when the original judgment at law became dormant in October of 1947. In its opinion the Appellate Court departed from the holding of this court in *Davidson* v. *Burke*, 143 Ill. 139, on the theory that such decision was contrary to the policy of the State of Illinois implied in other statutory provisions of the General Assembly.

Plaintiff's position in this court is restricted to the proposition that by the filing of the original creditor's suit against the subject property the original judgment became a lien thereon and that the lien continued thereafter up to the time of the decree irrespective that in the meantime seven years had elapsed from the date of the original judgment against Nellie. Plaintiff, in this court, has specifically abandoned and waived any reliance on the judgment of revival insofar as Nellie's interest was concerned.

The statutory provisions pertinent to the issues are not in doubt. Section 1 of the Judgments, Decrees and Executions Act, (Ill. Rev. Stat. 1939, chap. 77, par. 1,) provides that a judgment of a court of record shall be a lien on the real estate of a person against whom it is obtained situated within the county for which the court is held from the time the same is rendered or revived for the period of seven years and no longer. Section 6 of the same act provides that no execution shall issue upon any judgment after the expiration of seven years from the time the same becomes a lien except upon the revival of the

same. Section 25 of the Limitations Act (Ill. Rev. Stat. 1939, chap. 83, par. 24b) provides that judgments may be revived within 20 years next after the date of said judgment and not after. Section 49 of the Chancery Act provides that whenever an execution shall have been issued against the property of a defendant on a judgment at law or equity and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery against such defendant and any other person to compel the discovery of any property belonging to the defendant or due to him or held in trust for him, and to obtain satisfaction of the balance due on the judgment out of any property belonging to the defendant or held in trust for him, with certain exceptions, none of which are apparently applicable here, whether such property was originally liable to be taken in action at law or not.

This court has previously held that a proceeding under section 49 of the Chancery Act is clearly an equitable proceeding and not statutory, and that the jurisdiction of a court of chancery is not necessarily dependent upon the execution having been returned unsatisfied prior to the filing of the complaint, but that such requirement can be waived and must be raised as a special defense. (*Hart* v. *Oliver*, 296 Ill. 209.) Such objection was waived in the instant case by failure of defendants to set it up in their answer. *Hart* v. *Oliver*, 296 Ill. 209; *Birney* v. *Solomon*, 348 Ill. 410.

There is no question raised that when the original suit was instituted the court had jurisdiction of the necessary parties. By the filing of the suit and service of process the complainants acquired a lien upon the property. (*Lingle* v. *Clear Creek Drainage and Levee District*, 281 Ill. 511; *First National Bank* v. *Gage*, 93 Ill. 172; *Bonte* v. *Cooper*, 90 Ill. 440; *King* v. *Goodwin*, 130 Ill. 102.) In *Davidson* v. *Burke*, 143 Ill. 139, which decision the Appellate Court declined to follow, we held that when the creditor's bill

was filed and service of process obtained the *lis pendens* was an equitable levy and created an equitable lien on the lands and it was wholly unimportant that the final decree establishing the lien and ordering a sale was not rendered until long after the judgment at law had ceased to be a lien by force of the statute upon the real estate of the judgment creditor. We are of the opinion that such decision continues to be the prevailing rule as to the issue there passed upon.

The Appellate Court departed from the prior holding of this court in the *Davidson case* on the supposed analogy of *Addyston Pipe and Steel Co.* v. *City of Chicago,* 170 Ill. 580, and other cases cited, and upon the supposed analogy between garnishment proceedings and the instant suit. The *Addyston case* did not involve any question of the sufficiency of a judgment after the lapse of seven years, did not refer to the *Davidson case,* and merely held that a municipal corporation was not subject to a creditor's suit as a matter of public policy, the same as it is not subject to garnishment. The other Illinois decisions referred to by the Appellate Court are not persuasive to overrule the *Davidson* decision for several reasons: in none of them was the precise issue here involved presented; in none of them was the *Davidson case* even cited; in none of them was the basic distinction recognized that a garnishment proceeding is purely statutory, (*Roth* v. *Kaptowsky,* 401 Ill. 424,) while a creditor's bill is merely affirmative of the common law. *Hart* v. *Oliver,* 296 Ill. 209.

The rule of law followed in the *Davidson case* is not contrary to the statutory provisions of the Illinois Judgments and Liens Acts as indicated in the Appellate Court opinion. Such statutory provisions were enacted many years before the *Davidson* decision, and were before this court at that time. All of the cases cited by the Appellate Court related to legal titles only, none raised the question of *lis pendens* under a creditor's bill, and we continue to follow

the *Davidson case* unless and until the General Assembly determines public policy of this State to be otherwise.

The real issue presented by this case is the extent to which such lien survives the death of the judgment debtor. In both *First National Bank* v. *Gage,* 93 Ill. 172, and *King* v. *Goodwin,* 130 Ill. 102, it is clearly held that the lien a judgment creditor obtained upon the filing of a creditor's bill survives the death of the debtor and that his property passes to the personal representative charged with the lien and that the debts are to be paid out of the assets after his lien, like any other lien, has been first satisfied. From such decisions it appears that the lien acquired by the doctrine of *lis pendens* upon the filing of the creditor's bill survived and continued after Nellie's and Roman's death.

By filing his creditor's suit, plaintiff obtained a lien which survived the death of his judgment debtors and the Appellate Court was in error to reverse and remand the cause with directions to dismiss the suit for want of equity on the ground that said original judgment was dormant and would not sustain a lien.

Since the final judgment of the Appellate Court was confined to the merits of this one phase of the case and did not pass on other questions raised, this court is limited to the matters decided by the Appellate Court, will not consider other issues raised and will leave them for determination by the Appellate Court on a reconsideration of the case.

The Appellate Court judgment is reversed and the cause remanded to the Appellate Court for further proceedings not inconsistent with the opinions herein expressed.

*Reversed and remanded, with directions.*