2025 IL App (3d) 240505

Opinion filed September 2, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| CECILIA URBAN, as Special Administrator of<br>the Estate of Leonard Urban, Deceased,<br><br>　　　Plaintiff-Appellee,<br><br>　　　v.<br><br>JOSPEH BLEWITT,<br><br>　　　Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from the Circuit Court<br>of the 12th Judicial Circuit,<br>Will County, Illinois.<br><br>Appeal No. 3-24-0505<br>Circuit No. 05-L-337<br><br><br>The Honorable<br>James B. Harvey,<br>Judge, presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Bertani concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        The defendant, Joseph Blewitt, filed a petition to terminate a wage-deduction order entered against him in 2006 and in favor of Leonard Urban and the plaintiff, Cecilia Urban, as special administrator of Leonard's estate. The circuit court denied the petition, and Blewitt appealed. On appeal, he argues that the circuit court erred when it denied his petition, as the underlying judgment became dormant and was not revived within 20 years of its issuance. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    In 1995, Leonard Urban was injured while on the premises of a towing company in Cook County. Leonard alleged that he was beaten by three males, including one of the owners of the towing company. Leonard and his wife, Cecilia, retained Blewitt to represent them, and on August 16, 1996, Blewitt filed a civil complaint in Cook County on behalf of the Urbans regarding the incident. That complaint was dismissed for want of prosecution in September 2000. Blewitt refiled the action in September 2001, but the Urbans discharged Blewitt and retained new counsel.

¶ 4    Subsequently, in March 2003, the Urbans sued Blewitt for legal malpractice in Cook County. A default judgment was entered in favor of Leonard and against Blewitt on August 6, 2003, for more than $200,000. Since that time, protracted litigation has taken place; many of those details were included in *Blewitt v. Urban*, 2020 IL App (3d) 180722, and will be repeated here only insofar as necessitated by the instant appeal.

¶ 5    Because the August 6, 2003, judgment resolved only the claim by Leonard, the judgment itself was not considered final until March 29, 2004, when Cecilia was added to the judgment without a specific damage award. *Urban v. Blewitt*, No. 1-04-1575 (2005) (unpublished order under Illinois Supreme Court Rule 23). For convenience, we will hereinafter refer to that finalized judgment as the 2004 judgment.

¶ 6    On February 8, 2006, a wage-deduction order was entered against Blewitt's employer for the amount of the 2004 judgment, plus various costs and statutory interest. It is undisputed that the wage-deduction order has remained in place through the present, including through Leonard's death in March 2023 and Cecilia's appointment as special administrator of Leonard's estate to continue collection. It is also undisputed that the 2004 judgment has not been satisfied.

¶ 7    On April 5, 2024, Blewitt filed a motion to terminate the wage-deduction order. The motion claimed that the 2004 judgment upon which the wage-deduction order was based could no longer be revived because more than 20 years had elapsed since it was entered.

¶ 8    On May 13, 2024, the circuit court held a hearing on the motion. Blewitt argued in accord with his motion, while counsel for Urban argued that, by statute, wage-deduction orders continue "until the judgment is satisfied or released or he retires or he gets fired or a few other things but not a time limit." After hearing arguments, the court found Urban's counsel's argument more persuasive and accordingly denied Blewitt's motion. After his motion to reconsider was denied, Blewitt appealed.

¶ 9    After oral arguments, this court directed the parties to file supplemental briefs addressing the following issue, which was not addressed in the parties' original briefs: "whether section 12-108(c) of the Code of Civil Procedure [(735 ILCS 5/12-108 (West 2022))] is applicable to the present appeal, and if the statute is applicable, whether the statute applies retroactively." The parties have filed their supplemental briefs, which we have considered in reaching our decision.

¶ 10                              II. ANALYSIS

¶ 11    On appeal, Blewitt argues that the circuit court erred when it denied his motion to terminate the wage-deduction order. His argument assumes that the 2004 judgment upon which the wage-deduction order was based became dormant pursuant to section 12-108 of the Code of Civil Procedure (Code) (735 ILCS 5/12-108 (West 2022)). He argues that the 2004 judgment was never revived pursuant to section 2-1602 of the Code (*id.* § 2-1602)) and can no longer be revived pursuant to sections 2-1602 (*id.*) and 13-218 of the Code (735 ILCS 5/13-218 (West 2022)), as both provisions contain 20-year statutes of limitation on reviving judgments.

¶ 12    Issues involving statutory interpretation are reviewed *de novo*. *Doe v. Burke Wise Morrissey & Kaveny, LLC*, 2023 IL 129097, ¶ 20. "When the plain language of the statute is clear and unambiguous, the legislative intent that is discernible from this language must prevail, and no resort to other interpretive aids is necessary." *Chapman v. Chicago Department of Finance*, 2023 IL 128300, ¶ 29.

¶ 13    We first address the assumption under which Blewitt's initial briefs operate: the 2004 judgment entered against him became dormant pursuant to section 12-108 of the Code. That section addresses limitations on the enforcement of judgments. 735 ILCS 5/12-108 (West 2022). In relevant part, subsection (a) provides that "no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of this Act."[1] *Id.* § 12-108(a).

¶ 14    Curiously, in their initial briefs, neither party acknowledged the existence of the legislature's amendment of section 12-108 in 2019, which fundamentally changed the role of dormancy when wage-deduction proceedings are ongoing. The amendment to section 12-108, effective January 1, 2020, added subsection (c), which stated:

> "If a judgment or a consumer debt becomes dormant during the pendency of an enforcement proceeding against wages under Part 14 of Article II or Part 8 of Article XII, the enforcement may continue to conclusion if the enforcement is done under court supervision and includes a wage deduction order or turn over order and is against an

___

[1] Section 2-1601 abolished the common law writ of *scire facias*. 735 ILCS 5/2-1601 (West 2022). "*Scire facias* was '[a] judicial writ directing a debtor to appear and show cause why a dormant judgment against him should not be revived.' " *In re Marriage of Peck*, 2019 IL App (2d) 180598, ¶ 16 (quoting Black's Law Dictionary 1346 (6th ed. 1990)). Section 2-1601 further mandates that when a party seeks to revive a judgment, it must be done according to the procedures set forth in section 2-1602 of the Code. 735 ILCS 5/2-1601, 2-1602 (West 2022).

employer, garnishee, or other third party respondent." Pub. Act 101-168 (eff. Jan. 1, 2020) (adding 735 ILCS 5/12-108(c)).

It is undisputed that (1) the wage-deduction order entered in this case was obtained pursuant to proceedings under part 8 of article XII of the Code (735 ILCS 5/12-801 to 12-819 (West 2022)) and (2) the enforcement of the wage-deduction order against Blewitt's employer was ongoing at all times during this litigation. Due to the potential applicability of section 12-108(c) to this case and the parties' failures to even acknowledge its existence, we ordered supplemental briefing that directed the parties to address "whether section 12-108(c) of the Code of Civil Procedure is applicable to the present appeal, and if the statute is applicable, whether the statute applies retroactively."

¶ 15        Like his initial arguments, Blewitt's supplemental arguments also operate under the assumption that the 2004 judgment became dormant. He did not attempt to explain whether section 12-108(c) is applicable to this appeal; he merely argues that the statute could not apply retroactively and that the retroactivity question is moot anyway because judgments cannot be revived after 20 years. Ultimately, we do not reach the applicability of section 12-108(c) because, for the reasons explained below, we conclude the 2004 judgment never became dormant.

¶ 16        The consequence of Blewitt's assumption that the 2004 judgment became dormant in this case is to interpret section 12-108(a) as rendering *every* judgment dormant after seven years, regardless of whether any action was taken to enforce the judgment. That interpretation is incorrect.

¶ 17        A "dormant judgment" is defined as "[a] judgment that has not been executed or enforced within the statutory time limit." Black's Law Dictionary (12th ed. 2024). It is undisputed in this case that the plaintiffs sought and obtained enforcement of the 2004 judgment in February 2006

5

through wage-deduction proceedings. Thus, the judgment *was* enforced within the seven-year period described in section 12-108(a), and consequently, it never became dormant and therefore did not need to be revived. See, *e.g.*, *In re Contreras*, 571 B.R. 789, 793 (N.D. Ill. 2017) (citing section 12-108 of the Code and holding that, "[p]ursuant to Illinois law, a judgment becomes dormant if no action is taken to enforce it within seven years of it being rendered").

¶ 18    We acknowledge at this juncture that, in a different context, the First District has held that, "[u]nder section 12-108, a judgment becomes dormant after seven years." *CLP Venture, L.L.C. v. Central States, Southeast & Southwest Areas Pension Fund*, 2023 IL App (1st) 230574, ¶ 16. The *CLP Venture* court also stated, without citation, that, "[u]nder [sections 12-108(a), 2-1601, and 2-1602(a) of the Code], *an initial judgment may be enforced for 7 years, after which it becomes dormant* and may not be enforced unless that judgment is revived, and a judgment may be revived at any point up to 20 years." (Emphasis added.) *Id.* We decline to follow with the First District's interpretation of section 12-108(a), as it disregards the very definition of a dormant judgment as "[a] judgment that has *not* been executed or enforced within the statutory time limit." (Emphasis added.) Black's Law Dictionary (12th ed. 2024); see also 50 C.J.S. *Judgments* § 834 (Dec. 2024 update) (defining a dormant judgment as "one which has not been satisfied nor extinguished by lapse of time, but *which has remained so long unexecuted* that execution cannot now be issued upon it without first reviving the judgment" (emphasis added)); *Hernandez v. Drake*, 81 Ill. 34, 39 (1875) (holding that, "[a]t common law, a judgment became dormant if an execution was not issued within a year and a day, the presumption arising that it was satisfied, and it was irregular to sue out execution without reviving it"). Notably, the common-law rule on dormant judgments was codified as part of the statutory scheme that was the precursor for what are now sections 12-101 and 12-108 of the Code. Compare 1872 Ill. Laws 505-06 (§§ 1, 6), with 735 ILCS 5/12-101, 12-

108 (West 2022). Accordingly, we reject the First District's interpretation of section 12-108 as it appeared in *CLP Venture*.

¶ 19    We likewise reject Blewitt's further arguments that Cecilia had to revive the 2004 judgment within 20 years pursuant to sections 2-1602 and 13-218 of the Code. Section 2-1602 sets forth procedural requirements for reviving judgments, including that a petition to revive can be filed at any time within 20 years after the judgment's entry *if* the judgment becomes dormant. 735 ILCS 5/2-1602(a) (West 2022). Section 13-218 applies in instances such as personal actions against attorneys and merely states that a petition to revive a judgment "may be filed no later than 20 years next after the date of entry of such judgment." *Id.* § 13-218. Again, these provisions apply only to judgments that need to be revived, *i.e.*, dormant judgments. The 2004 judgment entered against Blewitt never became dormant and did not need to be revived; thus, sections 2-1602 and 13-218 are inapplicable.

¶ 20    In sum, we hold that, under the plain language of section 12-108(a), a judgment becomes dormant only if no attempt is made to enforce it within seven years of its entry. *Id.* § 12-108(a); see also *In re Contreras*, 571 B.R. at 793. In this case, Cecilia sought and obtained enforcement of the 2004 judgment through wage-deduction proceedings, meaning that the 2004 judgment never became dormant and therefore did not need to be revived. Under these circumstances, we reject Blewitt's argument and hold that the circuit court did not err when it denied his motion to terminate the wage-deduction order.

¶ 21                                III. CONCLUSION

¶ 22    The judgment of the circuit court of Will County is affirmed.

¶ 23    Affirmed.

*Urban v. Blewitt*, 2025 IL App (3d) 240505

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 05-L-337; the Hon. James B. Harvey, Judge, presiding. |
| **Attorneys for Appellant:** | Joseph L. Blewitt, of Crete, appellant *pro se*. |
| **Attorneys for Appellee:** | Alan R. Bruggeman, of Bruggeman, Hurst & Associates, P.C., of Mokena, for appellee. |